THE PEOPLE *v.* MORALES, *alias* YARE YARE.

APPEAL from the District Court of Mayagüez.

No. 95.—Decided June 30, 1906.

INSTRUCTIONS TO JURY—MURDER—MALICE AFORETHOUGHT.—In the case at bar the judge instructed the jury in regard to implied malice aforethought to the effect that it is manifest when no provocation appears on the part of the victim or when such provocation is not considerable. *Held,* That this instruction was justified by the law inasmuch as provocation is not considerable when it is insufficient to constitute an assault.

ID.—The judge in charging the jury to take into consideration, among other circumstances, the fact that the crime was committed in the night time and that the social position of the aggressor and the victim were entirely different, did not commit a substantial error which would warrant the annulment of the verdict, but such a recommendation is not justified by the better practice and should not be followed in such cases.

ID.—In charging the jury the judge should follow the provisions of section 233 in connection with section 266 of the Code of Criminal Procedure, instructing

the jury in regard to circumstances which constitute or qualify the crime itself, but he should leave the jury free to weigh the evidence itself and should not mention any circumstances except those tending to classify the crime.

ID. — TESTIMONY OF DEFENDANT — CORROBORATIVE TESTIMONY — CIRCUMSTANCES TENDING TO MODIFY, EXCUSE OR EXTENUATE—VOID VERDICT.—Although the burden of proof in a prosecution for murder is on the defendant to show extenuating circumstances or circumstances tending to excuse or justify the act, unless the evidence introduced by the prosecution tends to show such circumstances, notwithstanding this, an instruction to the jury to the effect that the statements made by the defendant under oath in testifying as a witness in his own behalf must be proved or corroborated, is so erroneous as to render the verdict of the jury null and void.

ID.—The court may instruct the jury in regard to the testimony of the defendant, calling its attention to the quality of his testimony, his interest in the case, and the motives by which he might be influenced, but it must leave the jury absolutely free to determine the veracity of a witness and accept or reject his testimony without erroneously stating that his testimony must be either supported or corroborated.

ID.—In a prosecution for murder when the defense thinks that the judge should instruct the jury in regard to the crime of manslaughter, he should ask the court so to do in the exercise of the right granted by section 266 of the Code of Criminal Procedure.

PRONOUNCING JUDGMENT IN CASES OF FELONY.—According to the English text of section 309 of the Code of Criminal Procedure the judgment in prosecutions of crime of the degree of felony cannot be pronounced until after the expiration of two days at least after the verdict.

VERDICT OF JURY—EXTENUATING CIRCUMSTANCES.—The fact that the jury recommended in its verdict great clemency for the defendant cannot be taken to mean that the jury finds extenuating circumstances in his favor, and such a request for clemency may be disregarded by the court because it is not authorized by law.

INSTRUCTIONS TO THE JURY—WEIGHING THE EVIDENCE.—It is the province of the jury to weigh the evidence, and under no circumstances nor in any manner should it be permitted to know the opinion of the judge charging it upon each of the elements of proof, and it is eminently improper for the judge to suggest anything to it which may tend to divert its judgment of what it honestly believes to be just and fair.

The facts are stated in the opinion.

*Mr. Texidor* for appellant.

*Mr. Rossy, fiscal,* for respondent.

MR. JUSTICE HERNÁNDEZ delivered the opinion of the court.

This is an appeal taken by José Morales, *alias* Yare Yare, from a judgment rendered by the District Court of Mayagüez in a prosecution for murder in the first degree.

The information was filed and sworn to by the *fiscal* of said district, and reads as follows:

"In the name and by the authority of The People of Porto Rico. United States of America, *ss:* The President of the United States. *The People of Porto Rico* v. *José Morales, alias Yare Yare, et al.* In the District Court of Mayagüez, August 8, 1905. José Morales, *alias* Yare Yare; Miguel Lojo y Vidal, *alias* Chencho; Pedro Vidal Goico, José Reyes Alvarez, Prudencio Vidal Estruch, Rafael Pesantos Gomez and Antonio Paz y Santos are accused by information filed by the *fiscal,* of the crime of murder in the first degree, a felony, committed as follows: The said José Morales, *alias* Yare Yare, between 9 and 10 p. m. of the 2d day of July of the current year, 1905, in the town of Añasco, judicial district of Mayagüez, P. R., deliberately and with malice aforethought, and showing an abandoned and malignant heart, unlawfully killed José Adolfo Pesante, while the latter was sitting in a chair on the sidewalk, in front of the pharmacy of Rafael Arrillaga, for which purpose he made use of a knife or dagger, inflicting a wound between the eighth and ninth intercostal spaces over the hepatic region, which penetrated the liver, from which wound he died the following day. The said Miguel Lojo y Vidal, *alias* Chencho; Pedro Vidal Goico, José Reyes Alvarez, Prudencio Vidal Estruch, Rafael Pesante Gomez and Antonio Paz y Santos are principals or authors in the crime committed, in that they advised and encouraged José Morales, *alias* Yare Yare, with malice aforethought, to commit the aforementioned crime in the manner above described. This act is contrary to the law in such case made and provided and against the peace and dignity of The People of Porto Rico.—Benjamin J. Horton, district *fiscal.*

"The above information is based on the sworn testimony of witnesses, and I solemnly believe that there is just cause for the filing of this information.—Benjamin J. Horton, district *fiscal.*

"Sworn to and signed before me, this 8th day of August, 1905.—Francisco Llavat, secretary of the District Court of Mayagüez."

José Morales, having been tried separately by a jury, the latter returned the following written verdict:

"We, the jury, and on its behalf, the undersigned foreman, find the defendant, José Morales, *alias* Yare Yare, guilty of the crime of murder in the first degree, and pray for great clemency. Mayagüez, September 23, 1905.—Agustín Roselló, foreman."

Three days later—that is to say, on the 23d of said month of September—the Mayagüez court set the 28th of said month, at 10 a. m., for pronouncing sentence, which it did as follows:

"In the city of Mayagüez, the 28th day of the month of September, A. D. 1905. This cause, prosecuted by The People of Porto Rico, against José Morales, *alias* Yare Yare, for the crime of murder in the first degree, was tried by jury. The jury found the defendant guilty of the crime of murder in the first degree. The defendant, after having been informed by the court of the nature of the charge against him, of the allegations of his defense and of the terms of the verdict, was asked whether he had any legal cause to show why judgment should not be pronounced against him, and replied that he had no cause to show. The first paragraph of section 202 of the Penal Code in force, provides that any person guilty of murder in the first degree is punishable by death. Therefore, the court, in the name of the the law, sentences José Morales, *alias* Yare Yare, as the material author criminally liable for the crime of murder in the first degree, without extenuating circumstances, committed on the person of José Adolfo Pesante, who had been a resident of the town of Añasco, to the penalty of death. It is ordered that the proper writ issue to one of the officers of the court directing him to take the said defendant from the common district jail, wherein he is now confined, to the departmental penitentiary in San Juan, and deliver him to the warden or person in charge thereof, in order that on the day set in said writ the execution of this sentence may be proceeded with, which execution shall take place within the walls of said penitentiary by hanging the defendant by the neck until dead. And may Almighty God have mercy on his soul.—Isidoro Soto Nussa, judge."

From this judgment, the defendant took an appeal to this Supreme Court, which appointed the learned Attorney Jacinto Texidor to defend the appellant.

Said attorney filed a lengthy brief in which, after summing up the testimony of the witnesses who testified at the trial, he alleged the following grounds in support of the appeal:

"1. That in the charge to the jury the court has committed a grave error to the prejudice of the defendant, (a) in that the jury

was instructed that implied malice aforethought· is manifested, when there is no provocation on the part of the victim, or at least not sufficient provocation; (b) in that the jury was advised to consider the different social standing of the aggressor and the attacked; (c) in that the jury was also charged that the crime was committed at night time, without explaining that this circumstance, unless purposely sought, should have no influence on the classification of the crime; (d) because the judge departed from the provisions of subdivision 8 of section 233 of the Code of Criminal Procedure, because instead of making a statement of the evidence, he submitted to the consideration of the jury only the testimony of the defendant, attacking it and erroneously requiring evidence in corroboration of his defense; (e) in that the jury was not charged on the real nature of murder in the second degree and of homicide, and was given an erroneous idea of the term 'a reasonable doubt.'

"2. That the provisions of section 309 of the Code of Criminal Procedure have not been complied with, as the judgment was rendered on a day set therefor outside of the term and not in the form prescribed in said section.

"3. That the verdict of the jury, in recommending great clemency for the defendant, recognized the existence of mitigating circumstances, which the judge did not take into consideration.

"4. That in the event that the verdict does not recognize any mitigating circumstance, it must be held to be improper in form, and should have been returned to the jury until a proper verdict had been obtained."

On these grounds the zealous counsel for José Morales prays that the judgment appealed from be reversed and that another judgment be rendered sentencing him to life imprisonment, or that the cause be ordered returned to the jury until a verdict in proper form shall be obtained.

The *fiscal* of the Supreme Court considered the foregoing allegations and contested them, moving for the dismissal of the appeal, with the costs against the appellant.

For the purpose of facilitating the examination and consideration of the errors alleged to have been committed in the charge to the jury, which have come to this court approved by the judge, we will transcribe the same in full:

"Gentlemen of the jury: I am going to be very brief in my charge,

because I am somewhat tired, and I believe that you also must be so after these long hours and laborious sessions, in which you have been obliged to maintain a state of careful attention. Gentlemen of the jury, you must, above all, consider and treat strictly all the evidence heard, weighing and judging carefully the degree of veracity of the witnesses who have testified; the form and manner in which they testified and the interest which each may have had in his own testimony; because it devolves exclusively upon the jury to weigh the facts and consequently the evidence. This cause, gentlemen of the jury, is of great importance, and it is also celebrated in the annals of criminality in Porto Rico, on account of the public interest it has aroused since the beginning, which makes it necessary for you to study it carefully and at length in a high spirit of impartiality, free from any prejudice or interested motives, turning a deaf ear to the songs of a syren with which sentiment sometimes endeavors to lull the holiest and purest inspirations of conscience.

"You must, therefore, treat and consider this cause with careful and deliberate attention, considering that this is a very grave act, which carries with it under the provisions of the penal law, the gravest of penalties—that is to say, death. Thus the life of a man is in your hands; it depends on your conscience according to the terms of your verdict, which must be based on the result of the evidence adduced in this cause by the public prosecutor, as the representative of The People of Porto Rico, and by the defense of the defendant as a whole. The verdict must, therefore, not only agree with the facts, but with the requirements of the law. But, what crime is being prosecuted in these proceedings? It has been set forth and explained by the *fiscal* explicitly in his information; he has told you that he accused José Morales, known by the nickname of Yare Yare, of the grave crime of 'murder in the first degree' committed upon the person of José Adolfo Pesante.

"It is therefore my duty to instruct you that it is a general principle in law, that every accused person must be presumed to be innocent, until proved otherwise, and this being the case, the burden of the proof is on the *fiscal,* who, as the representative of society, is under the unavoidable obligation of proving each and every one of the points of the information, in such a manner as fully to satisfy the conscience of the gentlemen of the jury, by a profound conviction of the guilt of the defendant beyond a reasonable doubt, and in such terms that the criminal liability of said defendant, as the material author of the crime of murder in the first degree committed upon the

person of the unfortunate José Adolfo Pesante, is fully established. It is furthermore necessary that it be proved that the death of the victim occurred within one year and a day after he received the wound, and no person can be convicted of murder, unless the fact of the death itself and of the death alleged to have been caused by the defendant are proved as separate and independent acts; the proof in the former case must be direct and in the latter direct or circumstantial, but so as to leave no reasonable doubt in your minds of any kind. Therefore you must consider in your deliberations in finding a verdict, all the essential elements which go to make up and constitute the crime of murder in general, in its two forms—that is to say, murder in the first degree and murder in the second degree.

"Upon this point I must charge you that the gravest crime defined in the Penal Code is that of murder in the first degree, inasmuch as section 202 thereof provides that every person guilty of said crime shall suffer death, unless there be extenuating circumstances, in which case life imprisonment shall be imposed; but attention must be called to the fact, that after it has been proved that the death was caused by the defendant, it devolves upon him to prove that such mitigating circumstances were present, excusing or justifying the act, unless such circumstances are shown by the evidence of the prosecution. The crime of murder in general is committed by the unlawful killing of a human being with malice aforethought, which may be express or implied.

"By unlawful killing, as an element of this crime, is understood not any killing, but a killing caused without cause or reason justifying or excusing it. Nor is malice, which is the wilful violation of the law, to the damage or prejudice of another, sufficient, but it is necessary that such unlawful and malicious killing take place with premeditation. What is premeditation, gentlemen of the jury? It is that function of the mind which determines the crime, the commission of which is in the thought of the guilty party. Consequently, when the latter plans the crime, when he thinks of and combines in his mind the means, mode and form of committing it, and selects such as he may deem necessary for its commission, and has decided in his innermost conscience to commit the crime in the manner and form which he has planned, and then gives expression to his thought in accordance with his will by acts which show his deliberate intent and malicious purpose to unlawfully kill another person, as he had thought and decided in his conscience, then, gentlemen of the jury, you have the idea of

premeditation and deliberation as elements necessary to constitute murder in the first degree.

"From this moment you see the genesis or principle of the development of the crime already premeditated and deliberated by the delinquent, as the *fiscal* has very aptly put it, and the court now summarizes the idea in the sense that, starting from this explanation, there is a subjective element prior to the commission of the crime, which is premeditation in the form of deliberation, and acts subsequent thereto, which result in its commission, revealing the deliberate intent of the culprit.

"It is in this unity or connection between these different elements, in which is contained the entire essence of the crime we are analyzing, a knowledge of which we must have in order to determine whether deliberation and malice aforethought, which may be express or implied, were present in this case.

"Malice aforethought is express when the culprit announces or manifests it by communicating to another person, for example, to an intimate friend or another, his deliberate and decided intent to commit the crime. When this purpose is expressed and published in such way as to evidence the intention of the culprit, you can say that the malice aforethought is express. Implied malice aforethought is present when there has been no provocation from the victim or it is. not considerable—that is to say, sufficient to justify an attack; therefore, if there has been no motive constituting a provocation leading to the attack, and consequent killing, the malice aforethought is implied. Consequently, it is also so, when the circumstances attending the crime and the brutal form of its commission, reveal or uncover the depravity of a soul or the malice of human conscience—that is to say, an abandoned and perverted heart, as the specific text of the law provides.

"Therefore, gentlemen of the jury, when the unlawful killing is malicious, wilful, premeditated and deliberate, or when with further depravity, the killing was caused by lying in wait or treachery—that is to say, if the culprit avails himself of means, measures or forms tending to assure the commission of the crime without any risk to his own person from any defense which the victim might make—the act thus committed embodies the characteristics of a crime of murder in the first degree; otherwise, it is in the second degree.

"In view hereof, it is necessary that you examine this act very carefully and profoundly, because it constitutes one of the gravest aspects of depravity and presents in all its nakedness one of the lowest sentiments of the human heart.

"To this end, in order that the gentlemen of the jury may make a

correct analysis and a careful study of the evidence, I believe that it is necessary that you consider above all the circumstances under which the crime was committed, the relations existing between the aggressor and the victim; that you consider the brutal form in which the crime was committed, the time—that is to say, the moment it was committed, the place it occurred, and the motive or cause therefor; finally, each and every one of the elements or circumstances attending its commission, because they are necessary not only in determining the act, but also to penetrate the innermost conscience of the defendant and ascertain the thought which impelled his will to commit the punishable act.

"I will speak of the relations existing between the aggressor and the victim. What were the relations between them, gentlemen of the jury? You have already heard it. They occupy different social positions and belong to a different class of society; they each occupy unequal positions therein, upon absolutely and completely different levels. The defendant comes from one of the lowest and most inferior levels of humankind; the victim from one of the highest and most preferable in the sphere in which we live; the former providing for his needs with the low product of his humble labor, the latter in a good position, favored by his good judgment and his labor, with all the antecedents of good conduct, and having at the moment the crime was committed, the supreme character which the discharge of public functions carries with it. This question must be carefully considered as one of the circumstances bearing a direct relation to the crime.

"The second point you must consider is the manner and form of the commission of the crime, taking into consideration two elements, namely: The weapon employed in the commission of the crime—that is to say, a knife with a point and cutting edge, a weapon whose use is prohibited, necessarily deadly—that is to say, capable of producing the death it did by its use solely; and in the second place, the part of the body upon which the wound was inflicted, which penetrated one of the most vital organs to life, as is the liver, located between the eighth and ninth intercostal space, resulting in the death of José Adolfo Pesante, as all of you have heard from the lips of the medical expert who testified before you.

"It is also necessary to consider the time or the moment the crime was committed. At what moment, gentlemen of the jury, was the crime committed? It was committed during the early hours of the night; night has always been the eternal accomplice of crimes, and sometimes it is intentionally selected by criminals in order to commit the crime with all the immunity possible, and to evade the action of justice. You must not belittle either as an element of information,

the place where the crime was committed, remembering that José Adolfo Pesante was seated on the sidewalk, according to the testimony of some of the witnesses; beyond the sidewalk, according to others, but at any rate, on the public road and surrounded, not by the light of the sun, but by the darkness of night. In this position, gentlemen of the jury, said Pesante was mortally wounded.

"In relation to what has been stated, you must also seek to ascertain the motive or cause for the crime, and dissipate the mystery of this horrible event. It is necessary, gentlemen of the jury, that you descend in your mind to the secret recesses of conscience in order to put yourselves in that psychological state which appears to be closed to the scrutinizing pupil of justice, yourselves making the key with which to open that sanctuary of the conscience of the delinquent, and read it as an open book. It is necessary, gentlemen of the jury, that you seek the inspiration which is to serve you as a conducting wire or guide in searching that conscience to determine the motive of the crime.

"And what statements has the accused made? The defendant has told you, gentlemen of the jury, as you will recollect, that between 9 and 10 p. m. of the night of July 2, of this year, he had entered the pharmacy of Mr. Arillaga under the pretext of purchasing 3 cents' worth of "*jalap*," that he had remained thoughtful and silent; that afterwards he asked for 3 more cents' worth of the same substance, which was given him by a clerk, and under these circumstances, while Mr. Arrillaga was seated with his back to the interior of the pharmacy, and Pesante in front and to the side of him, Yare Yare, who awaiting an opportunity, threw himself on his victim, and in doing so inflicted the wound upon him; and he had first told you, gentlemen of the jury, that he had found Pesante standing, and that, as Pesante had given him a black look, it caused him a species of vertigo or loss of self-control, and that then he had struck him with his knife. But has the latter statement of the defendant been corroborated in any manner, by any means of proof as prescribed by law? Has this statement, probably made to serve as a cause or excuse for the justification of the crime, been by chance duly proved? No testimony of any witness has been heard in this court referring to anything of this character, and, therefore, it is your duty, gentlemen of the jury, to consider and study this point, upon which I do nothing but call your attention.

"The defendant has also told you that he could no longer live in the town of Añasco; that he could not live quietly in Añasco because the police were persecuting him, but without stating any fact which could restrain his individual liberty. Not a single witness has

appeared in this court, gentlemen of the jury, and testified upon these facts alleged in justification and excuse of this crime, and the law requires that such causes be proved fully and absolutely; that they be proved fully and absolutely by the defendant, unless evidence introduced by the prosecution shall tend to show the causes or excuses in favor of the justification; only in such case could the gentlemen of the jury consider the statements made by the defense in the name and on behalf of the defendant.

"Does the allegation of the defendant that these police persecutions had been ordered and directed by the unfortunate José A. Pesante, advanced by the defense in his argument, appear to be proved in the opinion of the gentlemen of the jury? Has it been established in any manner that Pesante ordered and directed this odious persecution against the defendant? No witness has appeared here, no evidence has been presented in support of this allegation; and the law requires that this circumstance be established in a clear and incontrovertible manner.

"If, in the opinion of the gentlemen of the jury, this has not been proved, where will you find the reason or motive for this horrible crime? The will, gentlemen of the jury, is actuated in two different modes or forms; it is actuated by itself, obeying a purely internal or subjective impulse, or it is actuated by external excitement, by a foreign and objective motive, which acts from a distance, beyond the conscience of the culprit which it influences. If in your opinion it has not been proved that the defendant committed the crime under a secret impulse of a suggestive motive, engendered in his own conscience, then you must seek the ground or motive for his determination in another cause foreign or independent of his will. Does this foreign motive, this cause outside of the conscience of the defendant exist? And if it does exist is it of such a nature as to impel the will to commit the crime? Where, gentlemen of the jury, is that key of which I have spoken to you? You must seek it right here, gentlemen of the jury, within the evidence adduced by the prosecution. Remember, gentlemen of the jury, the eloquent statement made by the victim on the approach of death, at that sad and solemn moment of death when, surrounded by the love of his wife and the affection of his friends, when man cannot lie because his soul is about to appear before the justice of God, and he is impelled by certain and clear presentiments, 'that he had been murdered by a paid assassin.' Think, gentlemen of the jury, over this statement of a dying man, and connect it with the other points which I have enumerated solely for the purpose of laying before you the elements necessary for you to act properly.

Consequently, you must consider, gentlemen of the jury, whether the wound inflicted by the defendant was inflicted under these conditions— that is to say, while José A. Pesante was seated, and whether at the moment of the attack he was unprepared and defenseless; if you believe, if you are convinced beyond any reasonable doubt, or furthermore, that the prosecution has proved fully each and every one of the points of the information and of its material allegations; if you are fully satisfied of this proof, so that there is no doubt in your minds that José Morales, *alias* Yare Yare, unlawfully killed José A. Pesante, with express or implied malice aforethought and deliberately, with treachery—that is to say, under the circumstances and conditions in which he was, not thinking of any attack, and in addition, defenseless—then it is your unavoidable duty, in accordance with the facts and the law, to return a verdict finding José Morales, *alias* Yare Yare, guilty of the crime of 'murder in the first degree' upon the person of the unfortunate José A. Pesante. If, gentlemen of the jury, you should entertain some doubt as to the guilt of the defendant as the author of the crime of murder in the first degree, the law empowers you to return a verdict finding him guilty of murder in the second degree. The doubt of which the law speaks is not any doubt whatever; it is not an arbitrary doubt born of the imagination or fancy, but a doubt based on reason, because conscience, as the human spirit, is governed by definite and fixed laws. This doubt must not be based on mere conjectures or suspicions, but must be the result or the consequence of your findings upon the evidence introduced in this court as a whole. The doubt must have some justified motive in reason; if this be not so, gentlemen of the jury, you cannot take it into consideration. It is under these circumstances that you must treat and consider all the evidence presented. If, according to your serene and tranquil conscience, this man has descended to the low and vile condition of a murderer; if this man lay in wait for or treacherously and with express or implied malice aforethought unlawfully killed José A. Pesante, with deliberate intent or will, it is your unavoidable duty according to the dictates of your conscience and the provisions of law, to return a verdict of guilty in the manner and form I have stated above. Now, gentlemen of the jury, comply with your duty, as I believe I have complied with mine."

The explanation of the judge to the jury of the meaning of implied malice aforethought conforms to the definition given thereof in section 200 of the Penal Code, which provides

that it exists when "no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart." The provocation is not considerable when it is not sufficient or adequate to warrant an attack, and the judge in so holding, in our opinion, conformed to the provisions of the Penal Code. We do not believe that the judge committed any material error sufficient to render the verdict of the jury null, in recommending to it that it consider among other circumstances the fact that the crime was committed at nighttime, and the different social positions of the aggressor and the victim; but we do believe that such a recommendation does not conform to good practice, and should therefore not be admitted as a good precedent for other similar cases which may occur; because the judge must take as a basis for his charge the information, and comply with his functions according to the course laid down for him in subdivision 8 of section 233 of the Code of Criminal Procedure, in relation with section 266, omitting everything not necessary for the jury to return an impartial and just verdict. When circumstances are present which constitute or qualify the crime itself, the judge may charge the jury upon such circumstances, but of course always leaving to the jury the valuation of the evidence of the act originating it; but when the circumstances are merely generic or modify the criminal liability, as occurs in the case at bar with reference to the two mentioned, any charge thereon is superfluous, as they can have no influence whatsoever on the verdict of the jury.

The charge of the judge to the jury as to the weight to be given to the testimony of the defendant, José Morales, *alias* Yare Yare, is of the highest importance. The judge stated that the allegations of the defendant in his defense had to be proved fully and absolutely or corroborated by some means of proof, unless the evidence introduced by the prosecution tended to establish the causes or excuses in favor of the justification, in which case alone could the jury consider

the statements made by the defense in the name and on behalf of the defendant; and such charge is manifestly error, because although apparently based on section 247 of the Code of Criminal Procedure, improper construction has been placed upon said section, and it has been given a legal scope which it does not have.   Said section reads as follows:

"Upon a trial for murder, the commission of the homicide by the defendant being proved, the burden of proving circumstances of mitigation or that justify or excuse it, devolves upon him, unless the proof on the part of the prosecution tends to show that the crime committed only amounts to manslaughter, or that the defendant was justifiable or excusable."

As a matter of fact it devolved upon José Morales, *alias* Yare Yare, to prove the existence of mitigating circumstances or which justified or excused the act, unless the proof on the part of the prosecution relieved him therefrom.   But the fact is that Yare Yare desired to furnish this proof by testifying as a witness, although not obliged to testify according to section 7 of the Code of Criminal Procedure, and from that moment it devolved upon the jury to weigh the value of such evidence, without the existence of any other corroborative evidence being necessary.

The corroboration of the testimony of the defendant is not required in this case by any section of the Code of Criminal Procedure, although sections 250, 252 and 253 of said Code, require in certain cases for conviction corroboration of the testimony of a single witness.

Upon examining the act governing the introduction of evidence, approved March 9, 1905, we find in section 38 thereof, that neither the parties nor other persons who have an interest in the event of an action or proceeding can be deprived of the right to testify as witnesses; section 21 establishing the presumption that a witness is speaking the truth, although such presumption may be overcome by the

manner in which he testifies, by the character of his testimony, or by evidence affecting his character for truth, honesty, or integrity, or his motives, or by contradictory evidence.

We hold, as did the Supreme Court of California in the case of *The People* v. *Morrow,* 60 Cal., 142, that a defendant testifying in his own behalf in a criminal case, occupies a different position from that of any other witness, and is subject to the strongest temptation to which a witness can be subject, and that the court therefore did not err in calling the attention of the jury to this fact.

The Supreme Court of California, in the case of *The People* v. *Cronin,* 34 Cal., 195, held that "the instruction of the court as to the credibility of the defendant, who offered himself as a witness, was in all respects legal and proper."

This charge reads as follows:

"The defendant has offered himself as a witness on his own behalf on this trial, and in considering the weight and effect to be given his evidence, in addition to noticing his manner and the probability of his statements taken in connection with the evidence in the cause, you should consider his relation and situation under which he gives his testimony, the consequences to him relating from the result of this trial, and all the inducements and temptations which would ordinarily influence a person in his situation. You should carefully determine the amount of credibility to which his evidence is entitled; if convincing and carrying with it a belief in its truth, act upon it; if not, you have a right to reject it."

The Mayagüez court could have charged the jury upon the testimony of the defendant José Morales, *alias* Yare Yare, calling its attention to the character of that witness, to the interest he had in the cause, and the motives which might influence it, but leaving the jury at absolute liberty to decide as to the veracity of the witness and to accept or reject his testimony, without erroneously affirming that the allegations of Yare Yare had to be proved or corroborated, because no such provision of law exists.

Under the erroneous charge of the judge, which the jury

was obliged to receive as law, according to section 265 of the Code of Criminal Procedure, the verdict was returned which served as a basis for the sentence, which, therefore, contains a defect rendering it null and void, as it does the verdict.

The charges to the jury, as will be noted by a mere perusal thereof, indicate the difference between murder in the first degree and murder in the second degree, and properly define the idea of a reasonable doubt, and we see no reason why such charges should have been extended to the crime of manslaughter; but if counsel for the defense believed that this should have been done, he could have availed himself of the right vested in him by section 266 of the Code of Criminal Procedure.

With regard to the second ground of the appeal, we believe that the judge of the Mayagüez court did not violate the provisions of section 309 of said Code in rendering judgment on September 28 of last year—that is to say, five days after the verdict had been returned—because although the Spanish text of said section provides that in the cases it mentions the court shall set a day for pronouncing judgment, which, in cases of felony, must be not later than two days after the verdict, if the court intend to remain in session so long, the English text, which must prevail, provides that judgment shall be pronounced at least two days after the verdict, from which it appears that it cannot be pronounced before two days, and that the judgment appealed from was therefore pronounced within the legal period.

With respect to the third and fourth grounds alleged by counsel for the appellant in support of the appeal, they clearly cannot be sustained and should be dismissed, because the verdict of the jury was drawn in clear and concise terms which do not leave the slightest room for doubt that José Morales, *alias* Yare Yare, was found guilty of the crime of murder in the first degree, without mitigating circumstances, although great clemency was asked for him, a clemency which

the judge had a right to refuse, as he did, because it was not authorized by the statute.

We shall not conclude without inserting as applicable to the general terms of charges the doctrine announced by this court through Mr. Justice Figueras in the opinion delivered in the case of *The People of Porto Rico* v. *Salustiano Rodríguez,* for seduction, decided yesterday:

"The practice observed in this case by the judge of the lower court is not a good one. It devolves upon the jury to weigh the evidence, and under no circumstances nor in any manner should it be permitted to know the opinion of the judge charging it upon each of the elements of proof; it is not lawful to suggest anything to it which may tend to divert its judgment of what it honestly believes to be just and fair. The jury, as the only judge of the facts, must weigh the evidence and conscientiously decide what it may deem just, without suggestions which may disturb it in rendering its verdict."

In brief, we believe that as the judge of the lower court has erred in charging the jury upon the manner of weighing the testimony of the defendant, José Morales *alias* Yare Yare, the judgment rendered by said judge on September 28 of last year should be reversed, and a new trial ordered in accordance with the provisions of subdivision 5 of section 303 of the Code of Criminal Procedure, in relation with section 364 of said Code.            *Decided accordingly.*

Chief Justice Quiñones, and Justices Figueras, MacLeary and Wolf concurred.